## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 25-cv-20595-BLOOM/Elfenbein

RENEG CORP,

     Plaintiff,

v.

 JPMORGAN CHASE BANK, N.A.,

     Defendant.

_____/

### <u>ORDER ON MOTION TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss, ECF No. [18]. Plaintiff ReneG Corp filed a Response, ECF No. [22], to which Defendant filed a Reply, ECF No. [24]. The Court has reviewed the Motion, the record, the supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion to Dismiss is granted in part and denied in part.

### I.      BACKGROUND

On December 19, 2024, Plaintiff ReneG Corp ("ReneG") initiated this action against Defendant JPMorgan Chase Bank, N.A. ("Chase Bank") in the Eleventh Judicial Circuit in Miami-Dade County regarding a dispute over Defendant's allegedly unlawful retention of the remaining balance held in Plaintiff's bank account after its closure. *See* Case No. 2024-024128-CA-01. On February 10, 2025, Defendant filed a Notice of Removal to the Southern District of Florida, ECF No. [1], and thereafter filed its motion to dismiss the state court Complaint. Plaintiff moved to

amend the Complaint, ECF No. [15], which the Court granted. ECF No. [16]. On March 17, 2025, Plaintiff filed the operative Amended Complaint. ECF No. [17].

The Amended Complaint alleges that Plaintiff opened a Platinum Business checking account ("Account") with Defendant at one of its retail branches in Miami-Dade County, Florida, and managed the Account for several years without incident. *Id* at ¶ 7. However, on September 26, 2024, Defendant wrote a letter informing Plaintiff that Defendant "was unilaterally closing the Account." *Id.* at ¶ 8. At the time of the Account's closure, the Account had a remaining balance of $309,516.02. *Id.* at ¶ 9. Plaintiff never received a check for the outstanding balance, and to date, has not been reimbursed for those funds. *Id.* at ¶ 9. Defendant's written notice of the Account closure provided no indication explaining why Defendant was closing the Account, and the Account was not involved in any legal or administrative proceeding. *Id.* at ¶¶ 10, 11.

When Plaintiff originally opened the Account, it entered into a Deposit Account Agreement ("DAA") with Defendant. According to Plaintiff, "Defendant has acted beyond the scope of the [DAA]."[1] *Id.* at ¶ 13. Specifically, Section IX(c) of the DAA states that Chase Bank may "restrict" the Account for any of the following reasons:

> (a) The account is involved in any legal or administrative proceeding;
> (b) There exists conflicting information or instructions regarding account ownership, control, funds or activity;
> (c) There is suspicion of fraud or illegal activity;
> (d) There is suspicion that the customer may be the victim of a fraud; and
> (e) Chase Bank is complying with any federal, state or local law, rule or regulation.

*Id.* at ¶ 14. Chase Bank did not provide any of these reasons provided in Section IX(c) in the notice to Plaintiff of the Account's closure, and Plaintiff alleges "the DAA does not authorize Defendant to withhold Plaintiff's funds indefinitely and without explanation, particularly once Defendant has

---

[1] Plaintiff incorporated the DAA as Exhibit A to the Amended Complaint. ECF No. [17-1].

closed the account." *Id.* at ¶¶ 15-16. The DAA requires Defendant to return the outstanding balance to Plaintiff after the account has been closed under Section VII ("We many send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1"). *Id.* at ¶ 17. Plaintiffs further assert that Defendant has an independent duty, separate and distinct from the DAA, to refrain from converting Plaintiff's funds. *Id.* at ¶ 18.

After the Account was closed, Plaintiff contacted Defendant "on several occasions, by phone and in person." *Id.* at ¶ 20. Each time Plaintiff inquired about the status of the outstanding Account balance, Defendant informed Plaintiff the funds would be released but would not say when, by what means, and under what conditions the return of funds would be made. *Id.* at ¶ 20. On December 18, 2024, Plaintiff's counsel sent a demand letter to Defendant, in compliance with Fla. Stat. § 772.11; however, Defendant has not responded to Plaintiff's demand letter. *Id.* at ¶ 22.

Based on this conduct, Plaintiff asserts five claims against Defendant: civil theft (Count I), conversion (Count II), violation of Fla. Stat. § 674.401 (Count III), unjust enrichment (Count IV), and breach of the Deposit Account Agreement (Count V). ECF No. [17].

On March 27, 2025, Defendant filed the instant Motion to Dismiss, arguing that the Amended Complaint fails for six reasons. ECF No. [18]. First, all of Plaintiff's claims are governed by the DAA and are barred by the independent tort doctrine. ECF No. [18] at 1. Second, Plaintiff's civil theft claim fails because Plaintiff has not alleged that Defendant converted Plaintiff's funds with felonious intent. *Id.* at 2. Third, Plaintiff has not identified, and cannot identify, specific funds capable of identification for its conversion claim. *Id.* Fourth, Defendant did not violate Fla. Stat. § 674.401 because the statute does not apply to Plaintiff's funds held by Defendant. *Id.* Fifth, Plaintiff's unjust enrichment claim fails because an express contract exists between the parties. *Id.*

at 8. Lastly, Plaintiff's claim for breach of contract fails because the plain language of the DAA contradicts Plaintiff's allegation that Defendant breached the agreement. *Id.* at 1-2.

Plaintiff responds that it is entitled to plead alternative forms of relief under Federal Rule of Civil Procedure 8(d)(2), and that the claims for conversion, civil theft, and unjust enrichment are not barred by the independent tort doctrine. ECF No. [22] at 1-2. Additionally, Plaintiff contends that the DAA's terms are no longer applicable to the issue of Plaintiff's retained funds given Defendant's closure of the Account, and therefore, its claim for unjust enrichment is not barred by the existence of the DAA. *Id.* at 5. Regarding Defendant's argument that felonious intent was not properly alleged for the claim for civil theft, Plaintiff responds that its allegations show a "continuous and calculated effort on the part of Defendant Chase [B]ank to improperly withhold Plaintiff's funds." *Id.* at 5. Additionally, Plaintiff argues that Fla. Stat. § 674.401 is applicable because it details the exact amount of payable items that are at issue, and the account at issue is governed by section 674.401. *Id.* at 6.

Plaintiff asserts that it properly established a *prima facie* case for its conversion claim because it set out a specific sum of money in its Amended Complaint, demanded the return of the money as the owner of the property, and set forth Defendant's refusal to return the money. *Id.* at 8. Lastly, Plaintiff alleges that Defendant improperly seeks to dismiss the breach of contract claim because Defendant's objections are based on the merits of the claim and would be improperly considered for a motion to dismiss. *Id.*

## II.    LEGAL STANDARD

To survive a motion to dismiss, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he moving party bears the burden to show that the complaint should be dismissed." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola*

*v. White Wilson Med. Ctr. PA*, N. 09-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard demands more than an unadorned, the defendant unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As a general rule, when reviewing a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Although the Court is required to accept all of the factual allegations as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b) motion to dismiss, the court is ordinarily limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). However, it is well-settled that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require

conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (noting that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered").

## III.   DISCUSSION

### A.   Application of the Independent Tort Doctrine to Civil Theft, Conversion Claims, and Fla. Stat. § 674.401

There is no dispute that a contract exists between the parties and that the contract is the DAA. *See* ECF No. [17-1] (Plaintiff attaches the DAA as an exhibit to its Amended Complaint and alleges there exists an agreement between Plaintiff and Defendant). Defendant argues that, given the existence of a contract between the parties, Plaintiff's five claims should be dismissed as barred by the contract and the independent tort doctrine. ECF No. [18] at 2. According to Defendant, the DAA covers closing Accounts, and returning funds, and the circumstances surrounding when Defendant may freeze or restrict funds in an account. *Id.* at 7. Defendant asserts that the DAA allows it to close the account "for any reason or no reason without prior notice." *Id.* at 7 (citing DAA § VIII). Therefore, because all of Plaintiff's claims concern the closure of the Account and the restriction and holding of the outstanding balance contained in the Account, Defendant maintains that the claims must be brought under the DAA and "not in tort or some other extra-contractual claim." *Id.* at 8.

In its Response, Plaintiff fails to address the independent tort doctrine and rather argues that, under Florida law, the economic loss rule governs the prevention of tort claims arising out of a situation wherein the parties' relationship is defined by contract. ECF No. [22] at 2. Plaintiff asserts that the economic loss rule has been limited to contractual claims derived from a product liability allegation, which is not at issue here. *Id.* Plaintiff further asserts that because Defendant

closed the Account, the contractual relationship between the parties was terminated, thus calling into question the continued applicability of the DAA. *Id.* at 3. Accordingly, Defendant's continued retention of the funds without justification shows that Defendant acted beyond the scope of the DAA. *Id.* at 4. Plaintiff asserts that the question of whether the DAA governs Plaintiff's claims should preclude the applicability of the independent tort doctrine on a motion to dismiss. *Id.*

Plaintiff also argues that the existence of the DAA does not preclude Plaintiff's claims that originate in tort, even at the pleading stage. ECF No. [22] at 2. Plaintiff asserts that the DAA is a contract of adhesion that does not apply to Defendant's conduct, and Federal Rule of Civil Procedure 8(d)(2) permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.* at 1-2 (quoting Fed. R. Civ. P. 8(d)(2)).

In its Reply, Defendant agrees that Plaintiff may plead alternative claims for relief but argues that the independent tort doctrine bars claims when the conduct alleged in the tort claim is not separate and distinct from the breach of contract even if the claim is asserted in the alternative. ECF No. [24] at 1. Defendant points out that, rather than specifically addressing the independent tort doctrine, Plaintiff focuses on the economic loss rule, which is a separate and distinct legal doctrine. *Id.* at 2. Defendant also asserts that the DAA provides that the provisions continue to apply even after the Account's closure. *Id.* at 4 (citing ECF No. [17] at Ex. A). Furthermore, Defendant disagrees with Plaintiff's contention that the DAA is a contract of adhesion, arguing that Plaintiff specifically acknowledged receipt of the DAA and all its provisions and agreed to be bound its terms. *Id.* at 5.

The independent tort doctrine follows "fundamental contractual principles," which "continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) (quoting *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584-Orl-22TBS, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013)). Under Florida's independent tort doctrine, "Plaintiff may not repackage [ ] breach of contract claims as independent actions in tort." *Dorvil v. Nationstate Mortg. LLC,* 17-cv-23193, 2019 WL 1992932, at *17 (S.D. Fla. Mar. 26, 2019). A court may consider a tort action only for "intentional or negligent acts considered to be independent from acts that breached the contract." *Htp, Ltd. v. Lineas Aeras Costarricenses,* 685 So. 2d 1238, 1239 (Fla. 1996). Although Plaintiff is correct that Rule 8(d) of the Federal Rules of Civil Procedure permits a party "to set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones" or "state as many separate claims or defenses as it has, regardless of consistency," there is a longstanding common law principle that Plaintiff "may not recover in tort for a contract dispute unless the tort is independent of a breach of contract." *See Fitzgerald v. McNae*, No. 22-22171-CIV, 2023 WL 8476590, at *2 (S.D. Fla. Oct. 30, 2023).

Here, Plaintiff's claims for civil theft, conversion, and violation of Fla. Stat. § 674.401 must fail because each claim is premised on Defendant's alleged breach of the DAA and barred by Florida's independent tort doctrine. Plaintiff has failed to allege any independent act that would support the tort claims. Nevertheless, Plaintiff argues that the DAA does not preclude Plaintiff's tort claims because the economic loss rule does not apply to the DAA. ECF No. [22] at 4. In *Tiara Condominium Association, Inc. v. Marsh & McLennan Companies, Inc.*, the Florida Supreme Court explained that the "economic loss rule" is a "judicially created doctrine that sets forth the

circumstances under which a tort action is prohibited if the only damages suffered are economic losses." 110 So. 3d 399, 401 (Fla. 2013). The principle of the economic loss rule is to "prevent parties in contractual privity from suing in tort for purely economic losses." *Christie v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1232 (S.D. Fla. 2020).

The Florida Supreme Court has determined that application of the economic loss rule is limited to product liability cases. *Id.* at 1232. As Defendant correctly asserts, the Florida independent tort doctrine and economic loss rule are treated as separate and distinct doctrines used for recovery in a negligence action. *See Christie*, 497 F. Supp. 3d at 1232 (holding that the independent tort doctrine is still applicable following the *Tiara* decision, which limited the application of the economic loss rule to product liability cases); *Pearson v. Deutsche Bank AG*, No. 21-CV-22437, 2023 WL 5905958, at *9 n.8 (S.D. Fla. Sept. 11, 2023) ("Defendant correctly notes that the Eleventh Circuit has treated the independent tort doctrine and economic loss rule as separate hurdles for a plaintiff to recover in a negligence action"); *Medmoun v. Home Depot U.S.A., Inc.*, No. 8:21-CV-1585, 2022 WL 1443919, at *8 n.2 (M.D. Fla. May 7, 2022) (referring to the economic loss rule as "distinct from" the independent tort doctrine). Therefore, Plaintiff's argument that the economic loss rule does not bar its tort claims is inapposite and Plaintiff fails to address the fact that the claims are barred by the Florida independent tort doctrine.

Notwithstanding that the parties entered into a contract, Plaintiff alleges that the DAA is a contract of adhesion. ECF No. [22] at 2, 4. A contract of adhesion is one in which a "standardized contract form" is "offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions the consumers cannot obtain desired products or services except by acquiescing to the form contract." *In re Checking Acct. Overdraft Litig.*, 734 F. Supp. 2d 1294, 1298 (S.D. Fla. 2010)

(quoting *Eagle v. Fred Martin Motor Co.*, 809 N.E. 2d 1161, 1171 (2004)). However, as Defendant correctly points out, courts across the country, including courts in this district, have upheld Chase's DAA as a valid contract. *See Kruse v. JP Morgan Chase Bank, N.A.*, No. CV 23-4530, 2024 WL 3912982, at *5 (D.N.J. Aug. 23, 2024) ("it is undisputed that the Deposit Account Agreement is a valid contract between the parties"); *McCarthy v. JP Morgan Chase Bank*, 772 F. Supp. 3d 298, 303 (E.D.N.Y. 2025) ("The Deposit Account Agreements . . . set forth the contractual relationship between Chase and [defendant] with respect to his Chase accounts."); *Sanchez v. J.P. Morgan Chase Bank N.A.*, No. 14-30468-CIV, 2014 WL 4063046, at *3 (S.D. Fla. Aug. 15, 2014) (recognizing that plaintiffs' claims are governed by the DAA and that the DAA provisions are binding on plaintiffs because they received the agreement and did not opt out of the provision at dispute). The Court agrees with these prior court decisions and finds that Plaintiff's allegation that the DAA is a contract of adhesion is unfounded.[2]

Plaintiff contends it may still proceed with its tort claims because the unilateral closure of the Account and the Defendant's retention of the funds exceeded the scope of the DAA, thereby terminating any contractual privity. *Id.* However, as Defendant correctly points out, the DAA "continues to apply to [Plaintiff's] account and issues related to [Plaintiff's] account even after it closes." ECF No. [17-1] at § VIII. That provision preserves the contractual privity between the

---

[2] This Court's analysis of Plaintiff's claim that the DAA is a contract of adhesion is not even necessary given that Plaintiff did not allege that the DAA was a contract of adhesion until its Response to Defendant's Motion to Dismiss. *See Gimeno v. NCHMD, Inc.*, No. 20-cv-24870, 2021 WL 1669757, at 3 (Apr. 27, 2021), *rev'd and remanded on other grounds*, 38 F.4th 910 (11th Cir. 2022) ("[T]he Court notes that it is improper to clarify or amend claims in response to a motion to dismiss. The Eleventh Circuit has 'repeatedly [] held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.'" (citing *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x. 657, 665 (11th Cir. 2015))).

parties, resulting in a lack of an independent basis for Plaintiff's tort claims. Therefore, Counts I, II, and III are dismissed.[3]

Although the Court dismisses Counts I, II, and III based on the independent tort doctrine, Plaintiff also fails to assert a claim upon which relief may be granted.

### B. Conversion (Count II)

Defendant argues that Plaintiff cannot pursue its conversion claim because Plaintiff has failed to allege that Defendant converted specific and identifiable monies. ECF No. [18] at 12. Defendant argues that Plaintiff's identification of the outstanding balance does not sufficiently identify the specific money that Plaintiff requests to be returned. *Id.* at 14. Defendant also argues that Plaintiff has not identified any obligation that Defendant has to return the specific money. *Id.*

Plaintiff responds that focusing on how the funds are held is misguided because the proper analysis for conversion asks whether the owner of the property has demanded its return and whether the wrongdoer has refused to do so. ECF No. [22] at 8. Plaintiff alleges that as the owner of the outstanding sum of money remaining in the account, it requested the sum of money and Defendant refused to return the money. Therefore, Plaintiff has established a *prima facie* case of conversion. *Id.*

Plaintiff has failed to allege facts sufficient to establish its conversion claim. Under Florida law, conversion requires "an unauthorized act which deprives another of his property permanently or for an indefinite time," *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1292 (11th Cir. 2001) (quoting *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman) Ltd.*, 450 So. 2d 1157, 1160-61 (Fla.

---

[3] Although Defendant argues that Count IV ("unjust enrichment") and Count V ("breach of deposit account agreement") are barred by the independent tort doctrine, ECF No. [18] at 2, Plaintiff's claim for breach of contract is not a tort claim and therefore may not be evaluated under the independent tort doctrine. *See Perez v. Scottsdale Ins. Co.*, 19-cv-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) ("The independent tort doctrine bars recovery in tort for actions that challenge a breach of contract . . . .").

3d DCA 1984)). "A conversion occurs when a person who has a right to possession of property demands the property's return and the demand is not or cannot be met." *Ranger v. Wells Fargo Bank N.A.*, 757 F. App'x 896, 905 (11th Cir. 2018) (quoting *Shelby Mut. Ins. Co. v. Crain Press, Inc.*, 481 So. 2d 501, 503 (Fla. 2d DCA 1985)). Before a conversion can occur, the party that "was previously in rightful possession of another party's funds must be informed by the other party that: '1) continued possession of the funds is no longer permitted; 2) a demand for return of the funds is necessary; and 3) the party holding the funds must fail to comply with the demand.'" *Id.* (quoting *Black Bus. Inv. Fund of Cent. Fla., Inc. v. Fla. Dep't of Econ. Opportunity*, 178 So. 3d 931, 937 (Fla. 1st DCA 2015)). Florida courts have held that a demand is necessary when the original taking is lawful, but the withholding is the wrongful element. *Id.* Here, the parties agree that the DAA allows Defendant to restrict the funds in the Account for various reasons, including suspicion of fraud or illegal activity. ECF No. [17] at ¶ 64; ECF No. [18] at 7-8. However, Plaintiff contends that Defendant's indefinite withholding of the funds in the Account, particularly given the closure of the Account, is not permitted. ECF No. [17] at ¶¶ 65-66. Plaintiff alleges it contacted Defendant on several occasions to inquire about the status of the outstanding balance. ECF No. [17] at ¶ 20. Furthermore, Plaintiff's counsel sent a demand letter to Defendant in which counsel demanded the return of Plaintiff's funds. *Id.* at ¶ 22; ECF No. [17-2] at 1 ("Therefore, at this time, you are wrongfully withholding my client's funds. It is hereby demanded that you return these funds which you are wrongfully holding from my client.").

Plaintiff's conversion claim ultimately fails because it does not demonstrate the "specific and identifiable" monies necessary for a conversion claim. In addition to asserting a demand, cases applying Florida law have held that "funds in a bank account can only be the subject of conversion if that money at issue can be specifically identified." *Breig v. Wells Fargo Bank, N.A.*, No. 13-

80215-CIV, 2014 WL 806854, at *4 (S.D. Fla. Feb. 28, 2014). "Under Florida law, money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party marking the deposit, or where the wrongful possession of such property is obtained." *Aileron Inv. Mgmt., LLC v. Live Oak Banking Co.*, No. 8:21-cv-108-VMC-CPT, 2021 WL 1238401, at *2 (M.D. Fla. Apr. 2, 2021) (quoting *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 272 (11th Cir. 2009)). Here, Plaintiff has not alleged that the money was delivered at one time or by one act and in one mass. Plaintiff simply alleges that, at the time of the Account's closure, there was an outstanding balance of $309,16.02. ECF No. [17] at ¶ 35. As the court held in *Biondi v. Branch Banking and Trust Company*, it is not sufficient to simply identify specific unauthorized transfers by date and amount to assert a conversion claim. No. 1:18-CV-22521-UU, 2018 WL 6566027, at *6 (S.D. Fla. Aug. 28, 2018). Here, Plaintiff has not identified the source or date of deposit, or the amount of each fund that is held by Defendant. Instead, Plaintiff merely argues that by identifying the total amount of funds in the Account, it has identified specific monies. However, Plaintiff's Account cannot be used to form the basis of a conversion claim because once money is deposited into a general account,[4] "the bank takes title to the money and owes a dept to its customer, which corresponds to the amount of the deposit." *Carl v. Republic Security Bank*, 282 F. Supp. 2d 1358, 1366 (S.D. Fla. 2003) (citing *Tracy v. Lucik*, 138 Fla. 188, 189, So. 430, 435 (1939)). Consequently, the deposited funds become comingled with other money held by the bank, and the bank merely

---

[4] "The simple deposit of money, check or draft in a commercial bank on account of the depositor, without being complicated by any other transaction than that of depositing and withdrawing money, is a general deposit." *Carl*, 282 F. Supp. 2d at 1366 (quoting *Bank of West Orange v. Associates Discount Corp.*, 197 So. 2d 858, 861-62 (Fla. 4th DCA 1967)). Moreover, "Deposits are presumed to be 'general' unless they are proven to be 'special.'" *Id.* (quoting *Bryan v. Coconut Grove Bank & Trust Co.*, 101 Fla. 947, 132 So. 481, 484 (1931)). Therefore, because Plaintiff did not allege this was a special account, it is a general account.

must return the same amount of funds deposited by the customer, not the exact money that was originally deposited into the account.[5] *See Indus. Park Dev. Corp. v. Am. Express Bank*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (holding that, for a claim of conversion, there must be an obligation for a bank to keep intact or deliver the specific money at issue and that the mere obligation to pay any money in the same amount will not be enforced as an action for conversion); *Gambolati v. Sarkisian,* 622 So. 2d 47, 49 (Fla. 4th DCA 1993) (concluding that funds were not identifiable because defendant "was seeking to enforce an obligation to pay money and nothing more . . .. [Therefore, the defendant] was not required to pay to [the plaintiff] the identical monies he collected") (alteration in the original); *Russell v. The Praetorians,* 28 So. 2d 786, 789 (1947) ("It seems to be well settled, that trover lies for the conversion of money, where there is an obligation on the part of the defendant to return specific coin or notes [en]trusted to him.") (citation omitted); *Fla. Desk, Inc. v. Mitchell Intern., Inc.*, 817 So. 2d 1059, 1061 (Fla. 5th DCA 2002) (finding that funds were not identifiable where they "were unsegregated and were placed in a general operating account"); *In re Mouttet,* 493 B.R. 640, 662 (Bankr. S.D. Fla. 2013), *aff'd in part, rev'd in part on other grounds*, No. 13-22222-CIV, 2020 WL 5993925 (S.D. Fla. Oct. 9, 2020) ("Money cannot be converted unless the money is a specifically identifiable fund such as an escrow account, a bag of gold coins, or the like." (citing *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970))); *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970) ("To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such

---

[5] *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995) (explaining that an ordinary bank account does not consist of "money belonging to the depositor and held by the bank," but instead "consists of nothing more or less than a promise to pay, from the bank to the depositor" (citing *Bank of Marin v. England*, 385 U.S. 99, 101 (1966); *Keller v. Frederickstown Sav. Institution*, 193 Md. 292, 296, 66 A.2d 924, 925 (1949))).

money can be identified . . .. The requirement that the money be identified as specific chattel does not permit as a subject of conversion an indebtedness which may be discharged by the payment of money generally.") (citation omitted); *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006) ("Withdrawal of funds from a bank account may form the basis of an action for conversion 'if the specific money in question can be identified.'" (quoting *Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. 1st DCA 1983))). Here, Plaintiff has merely alleged the date when the funds were retained by Defendant, the date the Account was closed, and the amount in the Account. Consequently, because the funds identified were in a general account and were therefore commingled with Defendant's other funds, Plaintiff has failed to identify specific money necessary to support a conversion claim.

### C.  Civil Theft (Count I)

Defendant argues that Plaintiff cannot pursue a civil theft claim because Plaintiff has not and cannot allege criminal intent. ECF No. [18] at 10. Defendant asserts that under Florida law, to plead a civil theft claim, a plaintiff "must establish that [Defendant] had 'felonious intent' to appropriate Plaintiff's property for its own use or the use of any person not entitled to the use of the property." *Id.* at 10 (quoting *Almeida v. Amazon.com Inc.*, 456 F.3d 1316, 1327 (11th Cir. 2006)). Defendant contends that Plaintiff did not sufficiently plead a civil theft claim because Plaintiff's sole allegation regarding Defendant's intent is that the refusal to return the funds "amounts to a felonious deprivation of Plaintiff's property rights to their own funds." *Id.* (quoting ECF No. [17] at ¶ 33). Defendant argues that the allegation does not establish the intent required to assert a civil theft claim because Plaintiff admits in its letter to Defendant that Defendant returned wire transfers to the sending bank before subsequently closing the account because Chase believed fraud had occurred. *Id.* (citing ECF No. [17-2]).

Plaintiff argues that it has properly alleged criminal intent and claims that its allegations show a continuous and calculated effort on the part of Defendant to improperly withhold Plaintiff's funds. Plaintiff alleges that Defendant misrepresentation that the Plaintiff's funds would be released along with the continuous refusal to return Plaintiff's property after closing the Account establishes felonious intent. *Id.* at 5.

Defendant replies that, even if it had continuously refused to return Plaintiff's funds and misrepresented that the funds would be released, those actions do not amount to felonious intent because the funds were held pending a fraud investigation. ECF No. [24] at 6-7.

Pursuant to Fla. Stat. § 772.11, to establish civil theft, a plaintiff must allege that the defendant had a felonious intent to steal and that a conversion has taken place. *Gasparini*, 972 So. 2d 1053 1056 (Fla. 3d DCA 2008); *World Cellphones Distribs. Corp. v. De Surinaamsche Bank, N.V.*, 357 So. 3d 225, 230 (Fla. 3d DCA 2023) ("Civil theft, on the other hand, is a statutory form of conversion that essentially consists of 'conversion plus criminal intent.'"). As set forth above, Plaintiff has failed to allege a conversion claim. Therefore, Plaintiff cannot establish its cause of action for civil theft. *See Gasparini*, 972 So. 2d at 1056 ("To establish a claim for civil theft, a party must prove that a conversion has taken place . . . ."); *Batlle v. Wachovia Bank, N.A.*, No. 10-21782-Civ., 2011 WL 1085579, at *3 (S.D. Fla. March 21, 2011) (dismissing a civil theft claim for lack of factual basis to support a claim for conversion because conversion is a necessary element to a civil theft claim).

Plaintiff has also failed to adequately allege felonious intent. Felonious intent requires a showing that that Defendant "act[ed] with the intent to permanently deprive Plaintiff of property that was rightfully belonging to Plaintiff." *Laterza v. JPMorgan Chase Bank, N.A.*, 221 F. Supp. 3d 1347, 1353 (quoting *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1371-72 (S.D. Fla.

2003)); *see also Inglis v. Wells Fargo Bank, N.A.*, No. 2:14-cv-677-FtM-29CM, 2017 WL 637485, at *4 ("Felonious intent is the intent to deprive another of its property, which may be shown by circumstantial evidence." (citing *Aspen Invs. Corp. v. Holzworth*, 587 So. 2d 1374, 1376 (Fla. 4th DCA 1991))). Courts interpreting this definition of felonious intent have found that merely citing the civil theft statute and using word like "stolen, misappropriated, and criminal" are not sufficient to satisfy the pleading requirements as they amount to conclusory allegations and deductions. *Exxon v. Bank of Am., N.A.*, No. 19-80022-CIV, 2020 WL 13612721, at *8 (M.D. Fla. Mar. 6, 2020) (finding that the plaintiff's allegation that defendant bank knowingly misappropriated the plaintiff's mortgage payments for criminal purposes did not satisfy the pleading standard necessary for a civil theft claim).

Here, Plaintiff has failed to allege any facts that satisfy the pleading standard set forth in *Twombly*. *See* ECF No. [17] at ¶¶ 23-32. Plaintiff has not alleged that the funds were stolen or misappropriated or that Defendant engaged in any criminal conduct. *Id.* Rather, Plaintiff simply alleges that Defendant's "refusal to return the funds and continuous withholding of those funds . . . amounts to felonious deprivation of Plaintiff's property rights to their own funds." *Id.* at ¶ 31. Because Plaintiff has failed to adequately allege both the conversion and felonious intent elements its claim, Plaintiff's allegations are insufficient to establish civil theft.

### D. Applicability of Fla. Stat. § 674.401 (Count III)

Defendant argues that Plaintiff has not adequately stated a claim under Fla. Stat. § 674.401, as the statute has multiple sections, and Plaintiff has not alleged which section has been violated or what actions Defendant took to violate § 674.401. ECF No. [18] at 11-12.

Even if Plaintiff has referenced a specific provision Defendant maintains that § 674.401 is not applicable. *Id.* Defendant contends that § 674.401 "applies when the bank charges its

customer's account for an 'item' that is authorized by the customer and in accordance with any agreement between the customer and bank." *Id.* Defendant contends that § 674.401 only contemplates a bank's payment to a third party from a customer's account, but not the remittance of funds back to the customer. *Id.* at 12.

Plaintiff responds that it has set out the exact amount of payable "items" that are at issue in the "General Allegations" of the Amended Complaint, which are incorporated into Count III. ECF No. [22] at 6. Plaintiff also asserts that Defendant's argument that the statute does not apply to Plaintiff's withheld funds is based on a narrow interpretation that runs contrary to the Uniform Commercial Code's instructions to interpret a statute liberally. *Id.*

Fla. Stat. § 674.401(1) provides that:

> A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.

By its express terms, the purpose of § 674.401(1) is to hold banks accountable for funds that are paid out from a customer's bank account to a third party, but it does not hold banks liable for withholding funds from a customer. *See Katz v. JP Morgan Chase, N.A.*, No. 9:14-cv-80820, 2015 WL 11251764, at *4 ("Section 674.401 exposes a bank to liability for paying a forged, altered, or otherwise unauthorized check."); *List Industries, Inc. v. Wells Fargo Bank, N.A.*, at *1 (Section 674.401 "prohibits a bank from making payment on a check not properly payable, e.g., if the endorsement is forged."). Here, Plaintiff does not allege Defendant has withdrawn funds for a third-party by making a charge against the Account. ECF No. [18] at 11-12. Accordingly, Plaintiff's claim under Fla. Stat. § 674.401 is dismissed for failure to state a claim.

### E.  Unjust Enrichment (Count IV)

Defendant argues that, in addition to being barred by the independent tort doctrine, Plaintiff's claim for unjust enrichment should be dismissed because an express contract exists between the parties. ECF No. [18] at 8-9. Under Florida law, to plead an unjust enrichment claim, a plaintiff must allege that: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit; and (4) it would be unjust or inequitable for the defendant to retain the benefit without paying fair value for it." *Id.* (quoting *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, No. 21-62403-CIV, 2022 WL 19037216, at 3, 2022 U.S. Dist. LEXIS 23253, at *8-9 (S.D. Fla. Feb. 9, 2022)). Defendant argues that Plaintiff may raise an unjust enrichment claim in the alternative only when one of the parties asserts that the contract between the parties is invalid. *Id.* at 9 (citing *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1220 (S.D. Fla. 2015)).

Plaintiff responds that it may plead a claim for unjust enrichment in the alternative, despite the existence of the DAA. ECF No. [22] at 5. Plaintiff reiterates that the DAA is a contract of adhesion and that its applicability is questionable given Plaintiff's allegations that Defendant closed the Account. *Id.*

To successfully raise a claim of unjust enrichment as an alternative to a breach of contract claim, one of the parties must assert that the "contract governing the dispute is invalid." *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013); *Diamond "S" Dev/ Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.").

Plaintiff does not allege that the DAA is an invalid contract. *See generally*, ECF No. [17]. Furthermore, Plaintiff's assertion that the DAA is a contract of adhesion is belied by its allegations in the Amended Complaint that an agreement exists and unsupported by the cases that have held Chase's DAA to be a valid contract. *See Kruse*, 2024 WL 3912982, at *5 ("it is undisputed that the Deposit Account Agreement is a valid contract between the parties"); *McCarthy*, 772 F. Supp. 3d at 303 ("The Deposit Account Agreements . . . set forth the contractual relationship between Chase and [defendant] with respect to his Chase accounts."); *Sanchez*, 2014 WL 4063046, at *3 (recognizing that plaintiffs' claims are governed by the DAA and that the DAA provisions are binding on plaintiffs because they received the agreement and did not opt out of the provision in dispute). Similarly, Plaintiff's assertion that privity of contract was terminated when Defendant closed the Account, ECF No. [22] at 4, is not supported by the DAA record or case law. *See Colon v. Wells Fargo Bank, N.A.*, No. 1:14-CV-346, 2014 WL 12360936 (N.D. Ga. Sept. 16, 2014) (enforcing arbitration provision in banking agreement containing a clause that stated the arbitration provision would "survive any termination of [the] plaintiff's account" with the bank). The terms of the DAA, by which both parties agreed to operate, provides that the DAA's provisions continue to apply past the closure of the Account. ECF No. [17-1] at § VIII. Therefore, given the validity of the DAA, the Court dismisses Plaintiff's claim for unjust enrichment.

### F.  Breach of the Deposit Account Agreement (Count V)

Defendant argues that Plaintiff's claim "in the alternative" for breach of the Deposit Account Agreement should be dismissed because Defendant did not breach any provision of the DAA. ECF No. [18] at 15. According to Defendant, the DAA permits Defendant to restrict or hold Plaintiff's funds pending an investigation for several reasons, including a transaction that may involve illegal activity or fraud. *Id.* at 16. Defendant asserts that Plaintiff acknowledges Defendant

closed and restricted the Account due to concerns about fraudulent activity. *Id.* Therefore, it is "fully within its rights under the DAA to close Plaintiff's account and hold Plaintiff's funds pending investigation," and that advance notice or an explanation to Plaintiff is not required. *Id.*

Plaintiff responds that the DAA requires the return of Plaintiff's funds upon closure of the Account, which Defendant has failed to do and any question as to Defendant's right, duties, or obligations to retain the funds when fraud is suspected cannot be addressed at the motion to dismiss stage. ECF No. [22] at 8. Defendant replies that the DAA permits the actions taken by Defendant without notice to Plaintiff. ECF No. [24] at 11.

"In order to properly state a claim for breach of contract, a plaintiff must allege the existence of a contract, a breach thereof, and damages as a result of the breach." *De Sterling v. Bank of Am., N.A.*, No. 09-21490-CIV, 2009 WL 3756335, at *2 (S.D. Fla. Nov. 6, 2009). Here, it is undisputed that Plaintiff and Defendant are parties to the DAA. *See* ECF No. [17-1] (Plaintiff attaching the DAA as an exhibit to its Amended Complaint to support its existence); ECF No. [18] at 1. The DAA creates a contractual relationship between Plaintiff and Defendant. *See MJZ Corp v. Gulfstream First Bank & Trust, N.A.*, 420 So. 2d 396, 397 (S.D. Fla. 1982) (The "relationship between a bank and its depositing customer is contractual." (citing *McCrory Stores Corp. v. Tunnicliffe*, 104 Fla. 683, 687 (1932))); *Arkwright Mutual Insurance Co. v. Nationsbank, N.A.*, 212 F. 3d 1224, 1226 (11th Cir. 2000) ("Florida common law . . . recognizes that the relationship between a bank and its customer is contractual in nature."). Defendant correctly contends that the contractual relationship between the parties continued to exist even after the closure of the Account. ECF No. [17-1] at Ex. A § VIII; ECF No. [17] at ¶ 14. As the court in *MJZ Corporation v. Gulfstream First Bank & Trust, N.A.* explained, "closure of an account terminates the contractual relationship" between a bank and its customer "in the *absence* of any special agreement known to

the customer." 420 So. 2d at 398 (emphasis added). Here, the DAA "continues to apply to [Plaintiff's] account and issues related to [Plaintiff's] account even after it closes. ECF No. [17-1] at Ex. A § VIII; ECF No. [17] at ¶ 14. Therefore, the contractual privity between Defendant and Plaintiff continued to exist even after the closure of the Account.

Given the existence of a contract, the Court analyzes whether Plaintiff properly alleges a breach of the DAA. "In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Stepakof v. IberiaBank Corp.*, 637 F. Supp. 3d 1309, 1313 (S.D. Fla. 2022) (quoting *Pierce v. State Farm. Mut. Auto. Ins. Co.*, No. 14-cv-22691, 2014 WL 7671718, at *4 (S.D. Fla. 2014) (internal quotations omitted)). Plaintiff contends that Defendant violated Section VIII of the DAA, which states "We may send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1." ECF No. [17] (quoting ECF No. [17-1] at § IX(c)). According to Plaintiff, § IX(c) requires that Defendant return the outstanding balance to Plaintiff following the closure of the Account. Because Defendant has failed to do so, Plaintiff maintains Defendant has breached the parties' DAA.

While the DAA seemingly permits Defendant to take measures to restrict or hold Plaintiff's funds while an investigation is being conducted for reasons including that the transaction may involve illegal activity or fraud, ECF No. [17-1] at § IX(c), the Court agrees that the DAA requires Defendant to ultimately "return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1," upon the closure of the Account. *Id.* at § VIII. Because Plaintiff asserts the Account was closed without explanation and Defendant has yet to return the $309,516.02

balance to Plaintiff or offered an explanation for its failure to return the balance, Plaintiff has adequately alleged a breach of the DAA. ECF No. [17] at ¶¶ 8-10; ECF No. [18] at 1, 2, 16.

## IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Defendant's Motion to Dismiss, ECF No. [18], is **GRANTED IN PART** and **DENIED IN PART.** Counts I through IV are **DISMISSED.**

2.  Defendant shall file its Answer to Count V of Plaintiff's Amended Complaint no later than **August 19, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 5, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record