UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20595-BLOOM/Elfenbein

RENEG CORP,

    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

    Defendant.

_____/

**ORDER ON MOTION TO DISMISS COUNTERCLAIM FOR INTERPLEADER**

**THIS CAUSE** is before the Court upon Plaintiff ReneG Corp's ("Plaintiff") Motion to Dismiss Counterclaim for Interpleader ("Motion"), ECF No. [34]. Defendant JPMorgan Chase Bank, N.A. ("Defendant") filed a Response in Opposition ("Response"), ECF No. [38], to which Plaintiff filed a Reply, ECF No. [47]. The Court has reviewed the Motion, the record, the supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Counterclaim for Interpleader is dismissed for lack of jurisdiction, and Plaintiff's Motion is denied as moot.

**I.**     **BACKGROUND**

On December 19, 2024, Plaintiff initiated this action against Defendant in the Eleventh Judicial Circuit in Miami-Dade County because of a dispute over Defendant's allegedly unlawful retention of the remaining balance held in Plaintiff's bank account after the Defendant closed Plaintiff's account. *See* Case No. 2024-024128-CA-01. On February 10, 2025, Defendant filed a

Notice of Removal to the Southern District of Florida, ECF No. [1], and thereafter filed a motion to dismiss the state court Complaint. Plaintiff moved to amend the Complaint, ECF No. [15], which the Court granted. ECF No. [16]. On March 17, 2025, Plaintiff filed the operative Amended Complaint. ECF No. [17].

On May 15, 2025, Defendant filed a Counterclaim for Interpleader ("Counterclaim"). ECF No. [31]. The Counterclaim alleges that Plaintiff is a consulting company that opened a Chase Business Complete Checking account ending in x7872 (the "Account") with Defendant on November 30, 2023. *Id.* at ¶¶ 7-8. When opening the Account, a representative for Plaintiff signed a "Business Signature Card which provides that [Plaintiff] 'acknowledge[d] receipt of the Bank's Deposit Account Agreement [("DAA")] . . . which include[s] all provisions that apply to this deposit account . . . and agree[d] to be bound by the terms and conditions contained therein . . .'" *Id.* at ¶ 9. The DAA provides that Defendant "may restrict an account and reverse any transaction to protect [Defendant] or its customers for various reasons, including suspected fraud." *Id.* at ¶ 19. In particular, the DAA explicitly "permits [Defendant] to restrict the Account, reverse or freeze any funds in the Account, or remove funds from the Account and hold them pending an investigation" where Defendant "suspect[s] that a[ ] transaction may involve illegal activity or may be fraudulent." *Id.* at ¶ 20.

Several months after Plaintiff opened the Account, ReadyCap Lending, LLC ("Ready Cap") deposited $495,966.31 into the Account. *Id.* at ¶ 10. According to Plaintiff, the funds were deposited pursuant to a Small Business Administration ("SBA") loan Plaintiff obtained from ReadyCap. *Id.* at ¶ 11. More than a year later, an individual by the name of Aharon Atzmi purportedly wired two deposits totaling $250,000.00 to the Account from his Bank of America account. *Id.* at ¶ 12. Shortly after Atzmi wired the funds, "Bank of America recalled the

$250,000.00 because Atzmi contended both wires were fraudulent." *Id.* at ¶ 13. Specifically, Atzmi claimed the two wire transfers "were the result of a scam perpetuated by [Plaintiff] whereby Atzmi was contacted by someone he believed to be a federal agent, and was told that payment in the total amount of $250,000.00 must be made to avoid incarceration." *Id.* at ¶ 14.[1]

While Atzmi claimed the wires were fraudulent, Plaintiff "claims the wires from Atzmi were legitimate, and were the result of a cryptocurrency transaction." *Id.* at ¶ 17. However, "[i]n light of Atzmi['s] contention that he was defrauded by [Defendant's] account holder [i.e., Plaintiff], and pending its investigation of same, [Defendant] restricted and closed the Account on September 30, 2024, pursuant to its rights under the DAA." *Id.* at ¶ 21. At the time of the account closure, the Account held "a balance of $309,516.02, which [Defendant] is currently holding in suspense in a non-customer account." *Id.* at ¶ 22.

At the current juncture, Plaintiff contends that "it is entitled to the $309,516.02 balance as the account holder." *Id.* at ¶ 23. "ReadyCap claims an interest in the funds by virtue of the May 28, 2023 SBA loan" and "Atzmi claims an interest in the funds as he alleges he was defrauded in additional amounts by [Plaintiff] by sending fraudulent wires that were unable to be recalled to an account held at Truist Bank on or around September 5, 6, and 9, 2024." *Id.* at § 24-25.

Defendant maintains it is merely holding the $309,516.02 in an account and does not assert a claim over the funds. However, given that there is currently significant doubt as to who among Plaintiff, ReadyCap, and Atzmi is entitled to the funds, Defendant contends it faces a substantial danger of double or multiple liability. Accordingly, Defendant seeks to have Plaintiff, ReadyCap, and Atzmi's claims interplead pursuant to 28 U.S.C. § 1335. Furthermore, Defendant seeks to be

---

[1] Atzmi also claimed that Plaintiff had "defrauded him into making additional transfers [totaling $63,444] into a bank account held at Truist Bank. ECF No. [31] at ¶¶ 15-16. At the time of the filing of the Counterclaim, Atzmi had been unable to recover any of the funds deposited into the Truist Bank account(s). *Id.* at ¶ 16.

3

dismissed from the case and released from any further liability with respect to the funds at issue upon its "payment into the Registry of this Court of the $309,516.02 balance of the Account." *Id.* at ¶ 29.[2]

Plaintiff subsequently filed the instant Motion seeking to Dismiss Defendant's Counterclaim for Interpleader. ECF No. [34]. According to Plaintiff, Defendant cannot properly interplead here because Defendant is not an innocent stakeholder and because Defendant has failed to adequately allege a bona fide fear of multiple liability or a colorable adverse claim by either ReadyCap or Mr. Atzmi. *Id.* at 4-5.

Defendant maintains that its interpleader counterclaim should not be dismissed because (1) the DAA explicitly provides for interpleader, (2) Plaintiff's Motion improperly asks the Court to determine the merits of the interpleader claim, (3) the Counterclaim adequately alleges a bona fide fear of adverse claims from ReadyCap and Atzmi, and (4) because Defendant is an innocent stakeholder. *See* ECF No. [38].

## II.   LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he moving party bears the burden to show that the complaint [or counterclaim] should be dismissed." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, N. 09-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)); *see also Great Am. Assurance Co. v. Sanchuk, LLC*, No. 8:10-CV-2568-T-33AEP, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012). ("A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion

---

[2] Defendant also "seeks to recover expenses of this action, including reasonable attorneys' fees." ECF No. [31] at ¶ 30.

4

to dismiss a complaint."). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint or counterclaim "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard demands more than an unadorned, the defendant unlawfully-harmed-me accusation"). A complaint or counterclaim may not rest on '"naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint [or counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As a general rule, when reviewing a motion to dismiss, a Court must accept the pleading party's allegations as true and evaluate all plausible inferences derived from those facts in favor of the party asserting the claims. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Although the Court is required to accept all of the factual allegations as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. In considering a Rule 12(b) motion to dismiss, the court is ordinarily limited to the facts contained in the complaint or counterclaim and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006).

**B. Interpleader**

"Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner." *In re Mandalay Shores Co-op. Hous. Ass'n Inc.*,

5

21 F.3d 380, 383 (11th Cir. 1994). "Interpleader is liberally construed to effectuate this purpose"[3] and therefore, an interpleader action is generally "appropriate where the stakeholder may be subject to adverse claims that could expose it to multiple liability on the same fund." *BBVA USA Bancshares*, *Inc. v. Bandy*, No. 2:19-CV-01548-SGC, 2020 WL 3104594, at *2 (N.D. Ala. June 11, 2020); *Campbell v. N. Am. Co. for Life & Health Ins.*, No. 3:04CV1118 JTEM, 2007 WL 2209249, at *3 (M.D. Fla. July 30, 2007)

An "interpleader action proceeds in two stages." *Primerica Life Ins. Co. v. Young*, No. 8:22-CV-256-MSS-TGW, 2022 WL 17417002, at *1 (M.D. Fla. July 29, 2022), *report and recommendation adopted*, No. 8:22-CV-256-MSS-TGW, 2022 WL 17416903 (M.D. Fla. Aug. 18, 2022).[4] "At the first stage, the court determines whether interpleader is proper and 'whether to discharge the stakeholder from further liability to the claimants.'" *Miller v. Nationwide Ret. Sols., Inc.*, No. 2:15-CV-01574-JEO, 2017 WL 11426406, at *4 (N.D. Ala. Jan. 17, 2017) (quoting *Ohio Nat'l Life Assurance Corp. v. Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009)). In determining whether interpleader is proper, the court looks to see whether (1) there is a single fund at issue and (2) whether there are adverse claimants to that fund. *See Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1349 (S.D. Fla. 2010). So long as both requirements are satisfied and the jurisdictional requirements are met, the court will proceed to the second stage. During the second stage, the court must evaluate "the respective rights of the claimants to the interpleaded funds." *Ohio Nat'l Life Assurance Corp.*, 353 F. App'x at 248. "If

---

[3] "It is well-established that interpleader is a form of action originally developed under equity jurisprudence and that a district court has broad and significant powers in an interpleader action." *Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1284 (S.D. Fla. 2007).

[4] "The two-stage analysis to interpleader actions is equally applicable regardless of whether a party seeks interpleader pursuant to 28 U.S.C. § 1335 or Rule 22." *United States Life Ins. Co. in the City of New York v. McIntosh*, No. 5:10-CV-684-OC-34MCR, 2011 WL 13323236, at *2, n. 4 (M.D. Fla. Apr. 26, 2011)

the stakeholder is not dismissed [in the first stage], the 'trial at the second stage may be a proper vehicle for adjudicating counterclaims against the stakeholder based on an alleged independent liability to one of the claimants as well as any cross-claims that have been asserted between the claimants.'" *Miller*, 2017 WL 11426406, at *4 (quoting Wright & Miller § 1714).

There are two mechanisms for interpleading additional adverse claimants—28 U.S.C. § 1335 (statutory interpleader) and Federal Rule of Civil Procedure 22 (rule interpleader). Statutory interpleader provides the authority for:

> any person, firm, corporation, association, or society which (1) has in its custody or possession money or property worth $500 or more; or (2) has issued a note . . . or other instrument worth $500 or more . . . to bring an action of interpleader if two or more adverse claimants of diverse citizenship are claiming or may claim such money, property, or benefits, and the stakeholder has made the required deposit or bond [in the court's registry].

*Wachovia Bank, N.A. v. Tien*, 534 F. Supp. 2d 1267, 1283 (S.D. Fla. 2007) (citing 28 U.S.C. § 1335). Rule interpleader similarly "allows a stakeholder to bring an action joining two or more adverse claimants to a single fund." *John Alden Life Ins. Co. v. Vanlandingham*, No. 5:04-CV-538-OC-10GRJ, 2006 WL 1529047, *4 (M.D. Fla. May 30, 2006). Rule interpleader "supplements, rather than supersede[s] or limits[s], 28 U.S.C.A. § 1335[.]" *Wachovia Bank, N.A.*, 534 F. Supp. 2d at 1283. The key distinctions between the two types of interpleader are the jurisdictional requirements. Statutory interpleader requires that the amount in controversy must be at least $500 and minimal diversity exists among the adverse claimants, while rule interpleader requires the stakeholder to satisfy the diversity requirements set out under 28 U.S.C. § 1332. Although rule interpleader imposes a more burdensome diversity and amount in controversy requirement, statutory interpleader imposes an additional requirement that Rule Interpleader does not—the deposit of funds. To establish jurisdiction for a statutory interpleader claim, the stakeholder must either (1) deposit the funds at issue into the Court's registry, or (2) give a bond payable to the clerk

of court for such amount. 28 U.S.C. § 1335; *see also Alley, Maass, Rogers & Lindsay, P.A. v. Pretzel Ltd.*, No. 23-CV-80664-AMC/BER, 2023 WL 7005091, at *2 (S.D. Fla. Oct. 5, 2023), report and recommendation adopted, No. 23-80664-CIV, 2023 WL 7003244 (S.D. Fla. Oct. 24, 2023). Rule interpleader does not impose such a requirement. *See Pessoa v. Invesco Inv. Servs., Inc.*, No. 8:18-CV-266-T-JSS, 2019 WL 2147018, at *2 (M.D. Fla. May 3, 2019); *Cent. Bank of Tampa v. United States*, 838 F. Supp. 564, 566 (M.D. Fla. 1993).

### III.   DISCUSSION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799) and *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)). "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999); *see also Herskowitz v. Reid*, 187 F. App'x 911, 912-13 (11th Cir. 2006) (A "district court may act sua sponte to address the issue of subject matter jurisdiction at any time."). "The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could work a wrongful extension of federal jurisdiction and give courts power the Congress denied them." *Univ. of S. Ala.*, 168 F.3d at 410 (quoting *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982)) (internal quotations

8

omitted). Accordingly, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.*

Defendant asserts that its Counterclaim is brought pursuant to the federal interpleader statute, 28 U.S.C. § 1335. As noted above, § 1335 provides federal courts with subject matter jurisdiction where "(1) the money or property in the plaintiff's possession is valued at $500 or more; (2) two or more adverse claimants of diverse citizenship have claims or potential claims for the money or property in controversy; and (3) *the plaintiff deposits the money or property in controversy into the registry of the Court, or give a bond payable to the Clerk in the amount of such money or property*." *United States Life Ins. Co. in the City of New York v. McIntosh*, No. 5:10-CV-684-OC-34MCR, 2011 WL 13323236, at *2 (M.D. Fla. Apr. 26, 2011) (citing 28 U.S.C. § 1335) (emphasis added). Defendant's Counterclaim does not allege that it has deposited the disputed funds in the Court's registry or that it has obtained a bond payable to the Clerk of Court for such amount. *See* ECF No. [31]. Moreover, there is no evidence in the record that, following the filing of the Counterclaim, Defendant took appropriate steps to satisfy the deposit requirement necessary for federal statutory interpleader jurisdiction. Accordingly, the Court may not exercise jurisdiction over the Counterclaim pursuant to 28 U.S.C. § 1335. *See John Alden Life Ins. Co. v. Vanlandingham*, No. 5:04CV538OC10GRJ, 2006 WL 1529047, at *3 (M.D. Fla. May 30, 2006) (citing *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976)); *Truist Bank v. Milton Constructors LLC*, No. 3:25-CV-716-MMH-LLL, 2025 WL 2106669, at *1 (M.D. Fla. July 28, 2025).

While generally a stakeholder who has failed to deposit the disputed funds into the Court's registry may still establish jurisdiction over the interpleader action pursuant to Rule 22, *see*

*Murphy*, 534 F.2d at 1159,[5] Defendant has only asserted a statutory interpleader action, not a rule interpleader action. *See generally* ECF No. [31]. Therefore, because Defendant has failed to establish jurisdiction under § 1335, there is no basis for the Court to exercise jurisdiction over Defendant's interpleader claim. As such, the Counterclaim for Interpleader must be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Counterclaim for Interpleader, **ECF No. [31]**, is **DISMISSED WITHOUT PREJUDICE** for lack of federal subject-matter jurisdiction.

2. If Defendant seeks to refile its Counterclaim for Interpleader, Defendant shall deposit the disputed funds into the Court's registry or obtain a bond in the Clerk's name on or before November 7, 2025.

3. Plaintiff's Motion, **ECF No. [34]**, is **DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 10, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

[5] *See also Central Bank of Tampa v. United States*, 838 F. Supp. 564, 566 (M.D. Fla. 1993) ("The present interpleader action was brought under Rule 22 of the Federal Rules of Civil Procedure, and accordingly, a deposit into the registry of the court is not required.").