**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-20595-BLOOM/Elfenbein**

**RENEG CORP.,**

      Plaintiff / Counterclaim-Defendant,

v.

**JPMORGAN CHASE BANK, N.A.,**

      Defendant / Counterclaim-Plaintiff,

v.

**AHARON ATZMI** and **READYCAP LENDING, LLC,**

      Counterclaim-Defendants.

_____/

**READYCAP LENDING, LLC,**

      Crossclaim-Plaintiff/ Third-Party Plaintiff,

v.

**RENEG CORP.,**

      Crossclaim-Defendant,

      and

**HUGLIMAR A. IBANEZ CANELON,**

      Third-Party Defendant.

_____/

**ORDER ON MOTIONS TO MAINTAIN INTERPLEADED FUNDS IN COURT**
**REGISTRY AND FOR AN EXPEDITED HEARING OR TEMPORARY**
**ADMINISTRATIVE STAY**

**THIS CAUSE** is before the Court upon Cross claimant Aharon Atzmi ("Atzmi") Motion to Maintain Interpleaded Funds in the Court Registry Pending Adjudication of Competing Claims, ECF No. [101], and Motion for Expedited Hearing, or in the Alternative, For Temporary Administrative Stay to Maintain Interpleaded Funds in Court Registry Pending Adjudication of Competing Claims. ECF No. [102]. For the reasons that follow, Atzmi's Motions are denied.

## I.      FACTUAL BACKGROUND

On December 19, 2024, ReneG initiated this action against J.P. Morgan Chase Bank, N.A. ("Chase") in the Eleventh Judicial Circuit in Miami-Dade County because of a dispute over Chase's allegedly unlawful retention of the remaining balance held in ReneG's bank account after Chase closed ReneG's account. *See* Case No. 2024-024128-CA-01. On February 10, 2025, Chase filed a Notice of Removal to the Southern District of Florida, ECF No. [1].

Chase then filed a Counterclaim for Interpleader ("Original Counterclaim"), seeking to deposit the disputed funds into the Court Registry and Interplead Claimants ReadyCap Lending, LLC ("ReadyCap"), and Atzmi. ECF No. [31]. The Original Counterclaim alleged that ReneG is a consulting company that opened a Chase Business Complete Checking account ending in x7872 (the "Account") with Chase on November 30, 2023. *Id.* at ¶¶ 7-8. When opening the Account, a representative for ReneG signed a "Business Signature Card which provides that [ReneG] 'acknowledge[d] receipt of the Bank's Deposit Account Agreement [("DAA")] . . . which include[s] all provisions that apply to this deposit account . . . and agree[d] to be bound by the terms and conditions contained therein . . .'" *Id.* at ¶ 9. The DAA provides that Chase "may restrict an account and reverse any transaction to protect [Chase] or its customers for various reasons, including suspected fraud." *Id.* at ¶ 19. In particular, the DAA explicitly "permits [Chase] to restrict the Account, reverse or freeze any funds in the Account, or remove funds from the Account and

2

hold them pending an investigation" where Chase "suspect[s] that a[ ] transaction may involve illegal activity or may be fraudulent." *Id.* at ¶ 20.

Several months after ReneG opened the Account, ReadyCap Lending, LLC ("Ready Cap") deposited $495,966.31 into the Account. *Id.* at ¶ 10. According to ReneG, the funds were deposited pursuant to a Small Business Administration ("SBA") loan ReneG had obtained from ReadyCap. *Id.* at ¶ 11. More than a year later, Atzmi purportedly wired two deposits totaling $250,000 to the Account from his Bank of America account. *Id.* at ¶ 12. Shortly after Atzmi wired the funds, "Bank of America recalled the $250,000 because Atzmi contended both wires were fraudulent." *Id.* at ¶ 13. Specifically, Atzmi claimed the two wire transfers "were the result of a scam perpetuated by [ReneG] whereby Atzmi was contacted by someone he believed to be a federal agent, and was told that payment in the total amount of $250,000 must be made to avoid incarceration." *Id.* at ¶ 14.[1]

While Atzmi claimed the wires were fraudulent, ReneG "claims the wires from Atzmi were legitimate, and were the result of a cryptocurrency transaction." *Id.* at ¶ 17. However, "[i]n light of Atzmi['s] contention that he was defrauded by [Chase's] account holder [i.e., ReneG], and pending its investigation of same, [Chase] restricted and closed the Account on September 30, 2024, pursuant to its rights under the DAA." *Id.* at ¶ 21. At the time of the account closure, the Account held "a balance of $309,516.02, which [Chase] [was] holding in suspense in a non-customer account." *Id.* at ¶ 22.[2]

---

[1] Atzmi also claimed that Plaintiff had "defrauded him into making additional transfers [totaling $63,444] into a bank account held at Truist Bank. ECF No. [31] at ¶¶ 15-16. At the time of the filing of the Counterclaim, Atzmi had been unable to recover any of the funds deposited into the Truist Bank account(s). *Id.* at ¶ 16.

[2] Chase has since deposited those funds into the Court Registry. *See* ECF No. [92].

Atzmi filed an Answer to Chase's Counterclaim for Interpleader as well as a Crossclaim against ReneG. ECF No. [59].[3] Based on the alleged fraudulent scheme outlined above, Atzmi asserts the following claims against ReneG: (1) Fraudulent Misrepresentation; (2) Civil Conspiracy; (3) Conversion; and (4) Unjust Enrichment. *Id.* For each of those claims, Atzmi only seeks money damages. *See id.* There is no request for equitable relief of any kind.

ReneG subsequently filed a motion to dismiss Chase's Counterclaim for Interpleader, which the Court granted on October 10, 2025. ECF No. [82]. While the Court dismissed the Counterclaim for lack of jurisdiction, the Court permitted Chase to file an Amended Counterclaim and deposit the disputed funds into the Court Registry by November 7, 2025. *Id.*

On October 23, 2025, Magistrate Judge Elfenbein held a settlement conference with the parties at which ReneG reached an agreement with Chase, ReadyCap, and Third-Party Defendant, Hulimar Ibanez, and stipulated that Chase may deposit the interplead funds into the Court Registry. *See* ECF No. [91].[4] Pursuant to the settlement agreement, Chase filed the Amended Counterclaim for Interpleader ("Counterclaim") with largely the same allegations as asserted in the Original Counterclaim, and properly deposited the full $309,516.02 from the Account into the Court Registry. ECF No. [92].

On October 31, 2025, ReneG, ReadyCap, and Ibanez filed a Joint Motion for the Court to approve their settlement and partially release the interplead funds from the Court Registry. ECF No. [94]. Specifically, the parties requested the Court release the $246,072.02 not in dispute, making $119,255.04 payable directly to ReadyCap and $126,816.98 payable to the Law Offices

---

[3] Atzmi also filed a third-party Complaint against Lion Investment Group. *See* ECF No. [59] at 13.

[4] ReneG and Atzmi, however, reached an impasse as to Atzmi's claims. *See* ECF No. [91].

of Moises A Saltiel. *Id.* On November 6, 2025, the Court granted the parties' Joint Motion and directed the Clerk of Court to release the undisputed funds as requested by the parties. ECF No. [100]. Several days later, Atzmi filed the instant motions seeking to preliminarily enjoin or administratively stay the distribution of any of the funds in the Court Registry. ECF Nos. [101], [102].

## II.   DISCUSSION

Atzmi argues that the Court should wait to distribute the funds Chase has placed into the Court Registry until the Court has adjudicated his claims against ReneG, as such relief would be the most equitable means of ensuring that Atzmi is still able to recover from ReneG were he to eventually prevail in this action. *See* ECF Nos. [101], [102]. However, Atzmi offers no case law or any other legal basis suggesting that such relief is appropriate under the circumstances.

While Atzmi insists that a failure to preliminarily enjoin the disbursement of funds would render his claims moot by depriving him of any means of recovery, he readily admits that he does not have a claim to the specific funds in the Court Registry but rather has brought a claim for money damages against ReneG generally. *See* ECF No. [89-1] at 6 ("It is true that Atzmi is not claiming a right to the particular $300,000 remaining in the Chase account; his claim is for damages equal to the money he lost to the scheme."); *see Kernon v. Banner Life Ins. Co.*, No. 3:21-CV-312-MMH-PDB, 2022 WL 2121513, at *3 (M.D. Fla. May 6, 2022) ("Ordinarily, . . . a claimant should file an answer in interpleader, setting out his claim to the *res* in contest."), *report and recommendation adopted*, No. 3:21-CV-312-MMH-PDB, 2022 WL 1683361 (M.D. Fla. May 26, 2022) (quoting *Syms v. McRitchie*, 187 F.2d 915, 919 (5th Cir. 1951)). Simply because the funds in the Court registry may be sufficient to satisfy a hypothetical future judgment does not mean that Atzmi now has a legitimate legal interest, let alone a legal claim, to the specific funds at

issue in the instant interpleader action. *See Intabill, Inc. v. Elie*, No. 8:09-CV-834-T-23TGW, 2009 WL 10670490, at \*2 (M.D. Fla. May 6, 2009) ("[A] plaintiff may not obtain a temporary restraining order solely to ensure the availability of a fund from which to satisfy a money judgment."). Given that Atzmi is only seeking money damages, *see* ECF No. [59],[5] and has failed to allege or proffer evidence that ReneG has no other assets or funds sufficient to satisfy any future money judgment, there is no basis to enjoin or otherwise stay the partial distribution of the funds in the Court's registry. *See Pharma Funding, LLC v. FLTX Holdings, LLC*, No. 20-21103-CIV, 2021 WL 1166051, at \*10 (S.D. Fla. Mar. 8, 2021), *report and recommendation adopted*, No. 20-21103-CIV, 2021 WL 1165420 (S.D. Fla. Mar. 26, 2021) ("[c]ases in which the remedy sought is the recovery of money (whether as collection on a debt or as damages) do not fall within the jurisdiction of equity[.]").

Moreover, even if Atzmi did properly claim an interest to the funds in the Court registry, Atzmi has alleged he has only been unable to recover $63,444.[6] Critically, even after the Court ordered distribution of certain funds from the Court Registry to ReadyCap and the Law Offices of Moises A. Saltiel, $63,444 will remain in the Registry. Therefore, the Court's Order has not undermined Atzmi's ability to recover for his alleged injuries.

## III.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

---

[5] Even in Atzmi's claims for conversion and unjust enrichment against ReneG, he only seeks money damages, not equitable relief.

[6] While Atzmi argues that he "has recently amended his claim in this action to assert a count for civil theft (under Fla. Stat. § 772.11), which provides for treble damages and attorneys' fees," and as a result, his "claimed damages now exceed $190,000 (inclusive of treble damages and fees), ECF No. [101], the Court need not consider the additional claimed damages because Atzmi did not seek leave of court, and his amended cross claim was untimely. *See* ECF No. [8]; *see also* Fed. R. Civ. P. 15(a); *Bank of Am., N.A. v. Harris*, No. 1:17-CV-1201-CAP-JSA, 2017 WL 8186605, at \*1 (N.D. Ga. Oct. 13, 2017), *report and recommendation adopted*, No. 1:17-CV-1201-CAP, 2017 WL 8186600 (N.D. Ga. Oct. 31, 2017).

Case No. 25-cv-20595-BLOOM/Elfenbein

1. Atzmi's Motion to Maintain Interpleaded Funds in the Court Registry Pending Adjudication of Competing Claims, **ECF No. [101]**, is **DENIED.**

2. Atzmi's Motion for Expedited Hearing, or in the Alternative, For Temporary Administrative Stay to Maintain Interpleaded Funds in Court Registry Pending Adjudication of Competing Claims, **ECF No. [102]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 11, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record