UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20595-BLOOM/Elfenbein

**RENEG CORP.,**

    Plaintiff/Counterclaim-Defendant,

v.

**JPMORGAN CHASE BANK, N.A.,**

    Defendant/Counterclaim-Plaintiff,

v.

**AHARON ATZMI** and **READYCAP LENDING, LLC,**

    Counterclaim-Defendants.

_____/

**ORDER ON MOTIONS TO DISMISS AHARON ATZMI'S CROSSCLAIMS**

**THIS CAUSE** is before the Court upon Plaintiff ReneG Corp.'s ("ReneG") Motions to Dismiss Aharon Atzmi's Crossclaims. ECF No. [69]; ECF No. [104]. Cross Claimant Aharon Atzmi ("Atzmi") did not file a timely response to either Motion.[1] For the reasons that follow, ReneG's first Motion to Dismiss, ECF No. [69], is denied as moot, and its second Motion to Dismiss, ECF No. [104], is granted.

**I.    FACTUAL BACKGROUND**

On December 19, 2024, ReneG initiated this action against J.P. Morgan Chase Bank, N.A. ("Chase") in the Eleventh Judicial Circuit in Miami-Dade County based on a dispute over Chase's allegedly unlawful retention of the remaining balance held in ReneG's bank account after Chase

---

[1] The deadline to respond to ReneG's Motion to Dismiss, ECF No. [69], was September 8, 2025. Atzmi did not file a response until October 17, 2025—nearly forty days after the deadline. As for ReneG's more recent Motion to Dismiss, ECF No. [104], Atzmi has failed to file any response at all.

closed the account. *See* Case No. 2024-024128-CA-01. On February 10, 2025, Chase filed a Notice of Removal to the Southern District of Florida, ECF No. [1].

Chase then filed a Counterclaim for Interpleader ("Original Counterclaim"), seeking to deposit the disputed funds from ReneG's account into the Court Registry and interplead Claimants ReadyCap Lending, LLC ("ReadyCap") and Atzmi. ECF No. [31]. The Original Counterclaim alleged that ReneG is a consulting company that opened a Chase Business Complete Checking account ending in x7872 (the "Account") with Chase on November 30, 2023. *Id.* at ¶¶ 7-8. When opening the Account, a representative for ReneG signed a "Business Signature Card which provides that [ReneG] 'acknowledge[d] receipt of the Bank's Deposit Account Agreement [("DAA")] . . . which include[s] all provisions that apply to this deposit account . . . and agree[d] to be bound by the terms and conditions contained therein . . .'" *Id.* at ¶ 9. The DAA provides that Chase "may restrict an account and reverse any transaction to protect [Chase] or its customers for various reasons, including suspected fraud." *Id.* at ¶ 19. In particular, the DAA explicitly "permits [Chase] to restrict the Account, reverse or freeze any funds in the Account, or remove funds from the Account and hold them pending an investigation" where Chase "suspect[s] that a[ ] transaction may involve illegal activity or may be fraudulent." *Id.* at ¶ 20.

Several months after ReneG opened the Account, ReadyCap Lending, LLC ("ReadyCap") deposited $495,966.31 into the Account. *Id.* at ¶ 10. According to ReneG, the funds were deposited pursuant to a Small Business Administration ("SBA") loan ReneG had obtained from ReadyCap. *Id.* at ¶ 11. More than a year later, Atzmi purportedly wired two deposits totaling $250,000 to the Account from his own Bank of America account. *Id.* at ¶ 12. Shortly after Atzmi wired the funds, "Bank of America recalled the $250,000 because Atzmi contended both wires were fraudulent."

*Id.* at ¶ 13.[2] "In light of Atzmi['s] contention that he was defrauded by [Chase's] account holder [i.e., ReneG], and pending its investigation of same, [Chase also] restricted and closed the Account on September 30, 2024, pursuant to its rights under the DAA." *Id.* at ¶ 21. At the time of the Account closure, the Account held "a balance of $309,516.02, which [Chase] [was] holding in suspense in a non-customer account." *Id.* at ¶ 22.[3]

Atzmi also claims that ReneG and Third-Party Defendant, Lion Investment Group ("Lion Investment"), conspired to defraud him "into making additional transfers [totaling $63,444] into [Lion Investment's] bank account held at Truist Bank." ECF No. [31] at ¶¶ 15-16. Unlike the funds wired to ReneG's Account, Atzmi has been unable to recover any of the funds deposited into Lion Investment's Truist Bank account. *Id.* at ¶ 16.

On August 4, 2025, Atzmi filed an Answer to Chase's Counterclaim for Interpleader as well as a Crossclaim against ReneG and a Third-Party Complaint against Lion Investment. ECF No. [59]. Based on the alleged fraudulent scheme outlined above, Atzmi asserted the following claims against ReneG and Lion Investment: (1) Fraudulent Misrepresentation; (2) Civil Conspiracy; (3) Conversion; and (4) Unjust Enrichment. *Id.* ReneG thereafter filed its Motion to Dismiss Atzmi's Crossclaim, which remains pending. *See* ECF No. [69].

After Atzmi filed its Original Answer, Crossclaim, and Third-Party Complaint, the Court dismissed Chase's Counterclaim for Interpleader for lack of jurisdiction, ECF No. [82], and permitted Chase to file an Amended Counterclaim for Interpleader and deposit the disputed funds from the ReneG Account into the Court Registry by November 7, 2025. *Id.*

---

[2] Specifically, Atzmi claimed that the two wire transfers to ReneG's Account "were the result of a scam perpetuated by [ReneG], whereby Atzmi was contacted by someone he believed to be a federal agent, and was told that payment in the total amount of $250,000 must be made to avoid incarceration." *Id.* at ¶ 14.

[3] Chase has since deposited those funds into the Court Registry. *See* ECF No. [92].

3

On October 23, 2025, Magistrate Judge Elfenbein held a settlement conference with the parties at which ReneG reached an agreement with Chase, ReadyCap, and Third-Party Defendant, Hulimar Ibanez, and stipulated that Chase may deposit the interpleaded funds from the ReneG Account into the Court Registry. *See* ECF No. [91].[4] Pursuant to the settlement agreement, Chase filed the Amended Counterclaim for Interpleader ("Amended Counterclaim") with largely the same allegations as asserted in the Original Counterclaim, and properly deposited the full $309,516.02 from the Account into the Court Registry. ECF No. [92].

In response to Chase's Amended Counterclaim, Atzmi filed an Amended Answer, a Crossclaim against ReneG, and a Third-Party Complaint against Lion Investment. ECF No. [95]. In the Amended Answer, Atzmi alleges that he "has an interest in the interpleaded funds," specifically, "$63,444 of the funds currently held from the Account [which] represent[] the amount of his personal funds that were fraudulently obtained in [RegeG's] scam." *Id.* at ¶ 28. Atzmi's Amended Crossclaim and Third-Party Complaint allege that Atzmi was "contacted by an individual who falsely represented himself to be a federal law enforcement agent named 'Roger Harris,'" who informed Atzmi "that he was implicated in a serious criminal matter involving an underage victim." *Id.* at 7. The "imposter agent" told Atzmi that he would need to pay a substantial amount of money to cover various fines and expenses to avoid being arrested and ultimately prosecuted for his role in the alleged criminal conduct. *Id.* "Fearing the threatened consequences and believing the agent's claims were legitimate," Atzmi made the following payments in accordance with the imposter agent's directives:

1. $8,611 to a Truist bank account held in the name of Lion Investment Group on September 5, 2024;

---

[4] ReneG and Atzmi, however, reached an impasse as to Atzmi's claims. *See* ECF No. [91].

2. $14,204 to the Lion Investment Group account on September 6, 2024;

3. $40,640 to Lion Investment Group on September 9, 2024;

4. $84,000 to ReneG's Chase bank account on September 11, 2024;

5. $166,000 to ReneG's Chase bank account on September 13, 2024.

*Id.* at 17.

Shortly after wiring the funds to the ReneG and Lion Investment accounts, Atzmi discovered that the imposter agent had deceived him. Consequently, Atzmi reported the fraud to Bank of America, which was able to recover all the funds transferred to ReneG's Account but was unable to recall the $63,444 wired to Lion Investment's Truist bank account. *Id.* at 9. Atzmi maintains that ReneG and Lion Investment acted in concert to carry out this fraudulent scheme and that both entities are "controlled by the same group of individuals." *Id.* Therefore, according to Atzmi, "Defendants effectively operated as alter egos or a single enterprise, rather than independent actors." *Id.* As such, Atzmi alleges that ReneG is also liable for the funds he wired to Lion Investment's Truist bank account.

Given the alleged conduct, Atzmi asserts the following claims against ReneG in his Amended Crossclaim: (1) Fraudulent Misrepresentation, (2) Civil Conspiracy, (3) Conversion, (4) Unjust Enrichment, and (5) Civil Theft. *Id.* at 9-15. Atzmi also asserts the same five claims against Lion Investment in his Amended Third-Party Complaint. *Id.* at 18-23.

On November 20, 2025, ReneG filed a Motion to Dismiss Atzmi's Amended Crossclaim. ECF No. [104]. ReneG argues that the Court lacks subject matter jurisdiction over Atzmi's claims because there is a lack of diversity and the threshold amount in controversy has not been satisfied. *Id.* at 4-5. ReneG further contends that Atzmi's claims fail as a matter of law because the instant action is an interpleader action and Atzmi has no valid claim to the subject res—i.e., the funds

from ReneG's Account. *Id.* at 5-6. Because Atzmi has no claim to the subject res, he is an improperly interplead party and, therefore, ReneG argues that Atzmi lacks standing to bring his generalized fraud claims for money damages. ReneG also contends that Atzmi's Amended Crossclaim and Third-Party Complaint constitute an impermissible shotgun pleading, as the claims fail to distinguish which factual allegations are pertinent to Lion Investment and which are pertinent to ReneG. *Id.* at 6-8. Atzmi has not filed a Response to ReneG's Motion to Dismiss the Amended Crossclaim.

## II. LEGAL STANDARD

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). In considering a motion to dismiss, the court is generally limited to the facts contained in the complaint and attached exhibits. *See Thaeter*, 449 F.3d at 1352.

### III. DISCUSSION

As a preliminary matter, the Court must first determine which of Atzmi's Crossclaims is the operative pleading—the Original Crossclaim, ECF No. [59], or the subsequently Amended Crossclaim filed in response to Chase's Amended Counterclaim for Interpleader, ECF No. [95]. In a previous Order, the Court concluded that Atzmi's Original Answer, Crossclaim, and Third-Party Complaint controlled because his amended pleadings were untimely[5] and Atzmi had failed to seek leave of Court before filing the amended claims. *See* ECF No. [103] at 6 n. 6. Atzmi has since argued that the Court erred by failing to acknowledge the validity of his Amended Crossclaim. ECF No. [105]. Because the Court finds Atzmi's Amended Crossclaim equally defective, the Court

---

[5] The deadline to amend pleadings was May 2, 2025. *See* ECF No. [8].

will assume *arguendo* that Atzmi's Amended Crossclaim supersedes the Original and denies ReneG's Motion to Dismiss Atzmi's Original Crossclaim, ECF No. [69], as moot. The Court addresses ReneG's Motion to Dismiss Atzmi's Amended Crossclaim filed in response to Chase's Amended Counterclaim for Interpleader. ECF No. [104].

ReneG's primary basis for dismissal of the Amended Crossclaim is based on Atzmi's own allegations, which ReneG contends establish that Atzmi is not a properly interplead party to the instant action. ReneG explains that in an interpleader action, an interplead party, such as Atzmi, must have a legitimate claim to a single, specific, or identifiable res. *See id.* at 5-6. According to ReneG, "open-ended claims made against the general assets of a party cannot constitute a res for the purpose of interpleader because a plaintiff's unlimited potential liability on legally distinct damage claims is simply not a single, specific, or identifiable fund within the interpleader's possession or custody." *Id.* at 7 (quoting *Maraist L. Firm, P.A. v. Coates*, No. 21-CV-81467, 2022 WL 3902732, at *4 (S.D. Fla. July 6, 2022), *report and recommendation adopted sub nom. Maraist L. Firm v. Rose*, No. 21-81467-CIV, 2022 WL 3867849 (S.D. Fla. Aug. 30, 2022)). Accordingly, ReneG contends that Atzmi has failed to make any allegation sufficient to establish a valid claim to the interpleaded funds deriving from ReneG's Account. ReneG points out that Atzmi admits that all the funds he wired to ReneG's Account were returned to him almost immediately after he reported the alleged fraud to Bank of America. The only funds that Atzmi has not been able to recover consist of the $63,444 that he wired to a different bank account controlled by a different party (Lion Investment) at a different bank. *See* ECF No. [95] at 5. While ReneG acknowledges that Atzmi's Amended Crossclaim tries to connect ReneG to Lion Investment Group's fraud by alleging that ReneG and Lion Investment were conspirators operating as alter egos, ReneG

maintains that those allegations are insufficient as they merely establish a generalized claim for damages, not a claim to the specific res in dispute.

As of the date of this Order, Atzmi has failed to file a Response to the instant Motion and, as a result, ReneG's argument prevails by default. *See* S.D. Fla. L.R. 7.1(c) ("[E]ach party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for granting the motion by default."); *see also A1 Procurement, LLC v. Hendry Corp.*, No. 11-23582-CIV, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012) ("Failure to respond to arguments in a motion to dismiss is a sufficient basis to dismiss such claims by default.") (citing *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08–80897–CIV, 2009 WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009)).

Moreover, even looking to the merits of the instant Motion, the Court agrees with ReneG's argument. Atzmi has failed to allege any facts in his Amended Answer, Crossclaim, or Third-Party Complaint that plausibly establish he has a legitimate claim to the specific funds from ReneG's Account that were deposited into the Court Registry. Atzmi's conclusory assertion that he has a valid claim to $63,444 from the ReneG Account, without any facts to support that the funds in the Account were derived from ReneG and Lion Investment's fraudulent scheme, is insufficient to establish a claim to the res. *See Penaloza v. Drummond Co., Inc.*, 384 F. Supp. 3d 1328, 1337 (N.D. Ala. 2019) ("[C]onclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal."). Moreover, the mere fact that ReneG might be a co-conspirator or even an alter ego of Lion Investment is not relevant to the instant analysis. Without facts that plausibly trace the specific funds wired to the Lion Investment Truist account to the ReneG Account, Atzmi is not a valid interpleader but a non-party who has a generalized liability claim for damages. *See Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976)

(explaining that an "action asserted against the general assets of a party rather specific, identifiable 'property' is not a proper subject for interpleader relief"); *Maraist Law Firm, P.A.*, 2022 WL 3902732, at *4. If Atzmi seeks to pursue his claims against ReneG and Lion Investment, he may certainly do so in a separate action; he just may not do so in the instant interpleader action. Accordingly, ReneG's Motion to Dismiss is granted, and Atzmi, as well as his claims, are dismissed from the case.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. ReneG's Motion to Dismiss, **ECF No. [69]**, is **DENIED as MOOT.**

2. ReneG's Motion to Dismiss, **ECF No. [104]**, is **GRANTED**.

3. Atzmi's Crossclaim, **ECF No. [95]**, is **DISMISSED**.

4. Aharon Atzmi is **DISMISSED** as a party to this action, as he is not a properly interplead party with a valid interest in the subject res.[6]

5. Because the Court has concluded that Atzmi has no valid claim to the subject res in the Court's Registry, Plaintiff's Motion for Reconsideration of Order Denying Maintenance of Interpleaded Funds, **ECF No. [105]**, is **DENIED as MOOT**.

6. To the extent the Clerk of Court has not already done so, the Clerk shall release the funds in the Court Registry in accordance with the Court's Order on November 7, 2025, *see* **ECF No. [100]**.

7. To the extent not otherwise disposed of, any scheduled hearings and deadlines are **CANCELED**, and all other pending motions are **DENIED AS MOOT**.

---

[6] Accordingly, this means Atzmi's Third-Party Complaint against Lion Investment is dismissed as well.

8. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 15, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record